UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -:
JERRY SCHWARTZ,                 : 12 Civ. 1413 (GBD)(JCF)
                                   :
           Plaintiff,       :       REPORT AND
                           :     RECOMMENDATION
   - against -         :
                           :
NEW YORK STATE INSURANCE FUND, :
                           :
           Defendant.     :
- - - - - - - - - - - - - - - - - - -:

TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:

Jerry Schwartz, an Insurance Fund Hearing Representative with the New York State Insurance Fund ("NYSIF"), brings this action under the anti-retaliation provision of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Mr. Schwartz alleges that NYSIF retaliated against him in response to a complaint of discrimination by Mr. Schwartz's wife, who also works at NYSIF. NYSIF has moved to dismiss all of Mr. Schwartz's claims for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, I recommend that the defendant's motion be granted.

Background

    A. Mr. Schwartz

Mr. Schwartz was hired by NYSIF in 1978, and shortly after was assigned to the Medical Arbitration Unit in NYSIF's Claims

Department.   (Complaint ("Compl."), ¶¶ 13, 15).   Mr. Schwartz was appointed as a Senior Compensation Claims Examiner in 1980, and in the late 1980s left the Medical Arbitration Unit to work directly for a Principal Compensation Claims Examiner in a nearly identical capacity.   (Compl., ¶ 26; Notice of Charge dated March 29, 2011 ("Notice of Charge"), attached as Exh. B to Compl., at 2).

Throughout the 1980s and 1990s, the plaintiff's duties centered around medical billing and bill processing.   (Compl., ¶ 17).   In particular, Mr. Schwartz was responsible for reviewing bills, representing the defendant at Workers' Compensation arbitration hearings, responding to medical provider complaints, supervising personnel, and conducting large-scale settlements for high volume medical provider accounts.   (Compl., ¶¶ 27-28).   In 1999, Mr. Schwartz was asked to assist in establishing an automated bill processing system.   (Compl., ¶ 30).   He claims that he wrote over 90 percent of the edits for the system.   (Compl., ¶ 31).

In 1999, Mr. Schwartz was appointed to the position of "Insurance Fund Hearing Representative."   (Compl., ¶ 36).   As a Hearing Representative, Mr. Schwartz continued to perform his earlier duties in addition to participating on several committees relating to billing and serving as the primary liaison with Information Technology Services ("ITS") pertaining to automated

bill processing issues.  (Compl., ¶ 39).  From 2008, Mr. Schwartz also served as the only member of the Quality Assurance Review ("QAR") team responsible for reviewing and assessing bill processing by Claims Department district offices.  (Compl., ¶ 40).

### B. Mrs. Schwartz

Mr. Schwartz has been married to another NYSIF employee, Amara Schwartz, since 1993.  (Compl., ¶¶ 60-61; Notice of Charge at 3). Mrs. Schwartz is African-American.  (Compl., ¶ 60).  According to the plaintiff, Mrs. Schwartz filed a New York State Workers' Compensation form C-3 on July 14, 2005, alleging a "cumulative pattern, over several years, of inappropriate behavior by [NYSIF] employees/authority figures."  (Compl., ¶ 62).  Mr. Schwartz alleges that NYSIF accepted her claim after she established at a Workers' Compensation Board Hearing on April 7, 2007, that she suffered from "[a]djustment disorder with mixed depressed mood and anxiety and chronic emotional distress," and that her conditions were job-related.  (Compl., ¶ 63).

On February 4, 2008, Mrs. Schwartz filed a complaint of discrimination with the Equal Employment Opportunity Commission (the "EEOC").  (Compl., ¶ 65).  She subsequently received a Notice of Right to Sue Letter from the EEOC, and on November 4, 2009, filed an employment discrimination complaint in this Court.

(Compl., ¶¶ 66-67).

    C. <u>Alleged Retaliation</u>

      1. <u>Reduction in Duties from 2005 to 2010</u>

Mr. Schwartz alleges that NYSIF engaged in a "systematic effort . . . to reduce [his] duties over time" in retaliation for his wife's filing of her Workers' Compensation and EEOC claims. (Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl. Memo.") at 8; Compl., ¶ 95). In particular, Mr. Schwartz alleges that between July 15, 2005 and August 18, 2010 the following responsibilities were taken away from him for retaliatory reasons: (1) supervising the maintenance of the medical provider database, (2) responding to medical provider complaints, (3) reviewing and modifying provider computer records and preparing corrected IRS forms, and (4) serving as the Claims Department's primary liaison with ITS pertaining to automated bill processing issues. (Compl., ¶¶ 96-97, 104, 109, 115).

NYSIF disputes Mr. Schwartz's characterization, asserting that

[s]ubsequent to Mr. Schwartz's appointment . . . on June 24, 1999, he continued to work on various projects consistent with functions relative to those in his previous title of Senior Compensation Claims Examiner . . . during which time, he enjoyed the benefits of not having regular case loads as others in the Senior Compensation Claims . . . title. As functions were integrated and distributed among other Claims Department personnel, it became evident that Mr. Schwartz was not being fully utilized in a full time capacity and on

4

occasions, he was without any work.
(Respondent's Position Statement to Jerry Schwartz EEOC Charge
dated July 1, 2011 ("Position Statement"), attached as Exh. C to
Compl., at 7).

Mr. Schwartz responds that the "integration" and
"distribution" of functions described by NYSIF as the reasons for
his alleged underutilization were pretextual, as NYSIF merely
distributed his responsibilities to his colleagues Tracie Wang, a
Claims Service Representative I, and John Pulhamus, a Supervising
Medical Care Representative. (Compl., ¶¶ 94-122). He alleges that
not only was he never without work, but in fact he completed over
four thousand hours of overtime related exclusively to bills and
bill processing between 1999 and March 6, 2008. (Pl. Memo. at 15-
16; Compl., ¶¶ 90-91, 123-126).

Mr. Schwartz further claims that he received "no verbal or
written explanation . . . [and] no evaluation expressing [NYSIF's]
belief that [his] skill and expertise . . . in the area of
bills/bill processing in Workers' Compensation claims had
diminished." (Pl. Memo. at 8). In support of this claim, the
plaintiff has submitted a range of supervisor evaluation documents,
including performance reviews from 1999-2000, 2000-2001, 2001-2002,
2008-2009 and 2010-2011 that indicate he performed all of his

responsibilities during those periods in a satisfactory to above satisfactory manner. (Defendant's Performance Reviews ("Def. Perf. Reviews"), attached as Exh. E to Compl.).

      2.  <u>Reassignment on August 18, 2010</u>

Mr. Schwartz next alleges that on August 18, 2010 he was informed by his direct supervisor, Claims Department Assistant Director Marilyn Carretta, and the Supervising NYSIF Hearing Representative, Steven Kikoler, that he would be reassigned to the Hearing Statewide Services section of the Claims Department. (Compl., ¶¶ 69-70). This reassignment required the plaintiff to relocate from his existing work location to a work station designated for "Hearing Representatives," and accept a Workers' Compensation Hearing calendar like other Hearing Representatives. (Compl., ¶¶ 132-133).

Mr. Schwartz claims that his reassignment was retaliation for his wife's opposition to discrimination. (Compl., ¶ 181). NYSIF denies any retaliatory motive for the reassignment, claiming that "[a]s a result of a periodic review, it was determined that utilizing all available Insurance Fund Hearing Representatives to attend hearings would reduce the reliance on outside counsel and obtain some fiscal austerity." (Position Statement at 7).

Mr. Schwartz claims that contrary to NYSIF's allegations, not all Hearing Representatives were asked to perform the tasks listed within their job title. (Compl., ¶ 168). In support of this claim, Mr. Schwartz alleges that from October 2010 through to the filing of his complaint on February 24, 2012, Hearing Representatives Anne Murdock and Sheila Davis were exempted from a number of responsibilities and requirements within the title of Insurance Fund Hearing Representative. (Plaintiff's Rebuttal to State Fund Response dated November 7, 2011 ("Plaintiff's Rebuttal"), attached as Exh. D to Compl. at 4; Compl., ¶¶ 169-171, 174-177).

In response, NYSIF alleges that Mr. Schwartz's claim is unfounded, and that it

> exercised its discretion and [] assigned some unique job duties that are relative to the operational functions associated with expediting the tasks of Insurance Fund Hearing Representatives to Ms. Murdock based upon her prior position and work experience with respondent; as respondent previously did with Mr. Schwartz.

(Position Statement at 13). NYSIF did not specifically respond to Mr. Schwartz's allegations regarding Ms. Davis. However it noted that while NYSIF

> would prefer that employees perform the duties enumerated in their respective New York State Department of Civil Service titles . . .[,] there are always some pertinent functions relative to the business operations that are not

expressed in . . . titles; but the functions are related to the duties of the titles and necessary to fulfill essential operations.

(Position Statement at 13).

### 3. <u>Failure to Train</u>

Mr. Schwartz next alleges that NYSIF failed to provide him with adequate training following his August 18, 2010 reassignment, despite being told by both Ms. Caretta and Mr. Kikoler that he would be "given all the training he needed." (Compl., ¶ 135).  In particular, the plaintiff asserts that he was placed in a five-week Case Management Training ("CMT") course after two weeks had already been completed, and despite the fact that he had already requested and been approved for an additional three days of leave during the remainder of the training.  (Compl., ¶¶ 137-139; Pl. Memo. at 11).

In response, NYSIF claims that Mr. Schwartz never expressed that he was experiencing difficulty or that he was unhappy with his training, and even now has not asserted any "<u>concrete</u> ill-effects" from his allegedly insufficient training. (Position Statement at 11; Reply Memorandum in Further Support of Defendant's Motion to Dismiss ("Def. Reply Memo.") at 4).  The plaintiff denies this, and claims that he "stated several times verbally that he did not possess the foundation of knowledge that Claims Service Representatives I had when they transitioned into

the position of Insurance Fund Hearing Representative." (Compl., ¶ 155).

D. <u>Procedural History</u>

Mr. Schwartz filed charges of Title VII retaliation with the EEOC on March 29, 2011. (Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def. Memo.") at 4). NYSIF responded to these charges by letter on July 1, 2011, denying them in full. (Position Statement). On December 16, 2011, the EEOC issued a Dismissal and Notice of Right to Sue. (Notice of Right to Sue Letter dated December 16, 2011 ("Right to Sue Letter"), attached as Exh. A to Compl.).

On February 24, 2012, Mr. Schwartz commenced the current action seeking back pay, front pay, benefits, compensatory damages and punitive damages in the total amount of $441,475.91, plus attorneys' fees, expert fees, costs and disbursements. (Compl. at 25). In response, NYSIF filed the instant motion to dismiss.

<u>Discussion</u>

NYSIF has moved to dismiss Mr. Schwartz's complaint on the grounds that (1) all claims relating to behavior prior to June 3, 2010 are time-barred, (2) Mr. Schwartz has failed to allege an adverse employment action with respect to any timely claims, and (3) he has failed to articulate a causal connection between the

purported activity of his wife and any adverse employment action. (Def. Memo. at 1, 5).

A. <u>Standard of Review</u>

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007) (per curiam); <u>Jackson v. County of Rockland</u>, 450 F. App'x 15, 18 (2d Cir. 2011). A complaint may be dismissed where it fails to plead enough facts "'to state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). The pleading must be sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Twombly</u>, 550 U.S. at 555 (alteration in original) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678.

However, the pleadings of a <u>pro se</u> party should be read "'to raise the strongest arguments that they suggest.'" <u>Jackson</u>, 450 F. App'x at 18 (quoting <u>Triestman v. Federal Bureau of Prisons</u>, 470

F.3d 471, 474 (2d Cir. 2006)).  Even after Iqbal, which imposed
heightened pleading standards for all complaints, pro se complaints
are to be liberally construed.  See Harris v. Mills, 572 F.3d 66,
71-72 (2d Cir. 2009).  This principle mandates consideration of any
allegations in the plaintiff's memorandum in response to the
defendant's motion to dismiss, as well as any attached or
referenced written materials.  Ridgway v. Metropolitan Museum of
Art, No. 06 Civ. 5055, 2007 WL 1098737, at *2 (S.D.N.Y. April 10,
2007) (citing Gill v. Mooney, 824 F.2d 192, 195 (2d Cir. 1987)).
Dismissal of a pro se complaint is nevertheless appropriate where
a plaintiff has clearly failed to meet minimum pleading
requirements.  See, e.g., Rodriguez v. Weprin, 116 F.3d 62, 65 (2d
Cir. 1997)); accord Honig v. Bloomberg, No. 08 Civ. 541, 2008 WL
8181103, at *4 (S.D.N.Y. Dec. 8, 2008), aff'd, 334 F. App'x 452 (2d
Cir. 2009).

   B. Retaliation

   Claims of discrimination under Title VII are analyzed in
accordance with the three-part framework established by the Supreme
Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).
Under the McDonnell Douglas framework, the plaintiff must first
establish a prima facie case of discrimination, including that the
defendant took one or more adverse employment actions against him.

11

<u>McDonnell Douglas</u>, 411 U.S. at 802; <u>Woodman v. WWOR-TV, Inc.</u>, 411 F.3d 69, 76 (2d Cir. 2005).  Once the plaintiff has established a prima facie case, the burden shifts to the defendant to produce evidence that the adverse employment actions were taken "for a legitimate, nondiscriminatory reason." <u>Papelino v. Albany College of Pharmacy of Union University</u>, 633 F.3d 81, 92 (2d Cir. 2011).

Notwithstanding this intermediate shift of the burden of production, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981); <u>see also</u> <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506-07 (1993).

Accordingly, if the defendant provides evidence of legitimate nondiscriminatory reasons for its action, the plaintiff must then "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." <u>Burdine</u>, 450 U.S. at 253. Specifically, to oppose a summary judgment motion successfully, a plaintiff must provide "sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false," <u>Alam v. HSBC Bank USA</u>, No. 07 Civ. 3540,

2009 WL 3096293, at *8 (S.D.N.Y. Sep. 28, 2009) (quoting <u>Gilligan</u> <u>v. City of Moreau</u>, No. 00-7109, 2000 WL 1608907, at *3 (2d Cir. Oct. 25, 2000) (internal quotation marks omitted)), and show "that the defendant's employment decision was more likely than not based in whole or in part on discrimination" <u>Paul v. Wyeth Pharmaceuticals, Inc.</u>, 326 Fed. App'x 18, 19 (2d Cir. 2009) (quoting <u>Stern v. Trustees of Columbia University in the City of New York</u>, 131 F.3d 305, 312 (2d Cir. 1997)) (internal quotation marks omitted).  The issue for the court "is not whether the employer reached a correct conclusion" in taking the employment action, but "whether the employer made a good-faith business determination."  <u>Baur v. Rosenberg, Minc, Falkoff & Wolff</u>, No. 07 Civ. 8835, 2008 WL 5110976, at *5 (S.D.N.Y. Dec. 2, 2008).

To state a prima face case of retaliation,

a plaintiff must adduce evidence sufficient to permit a rational trier of fact to find (1) that he engaged in protected [activity] under [the anti-discrimination statutes], (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action, i.e., that a retaliatory motive played a part in the adverse employment action.

<u>Fincher v. Depository Trust & Clearing Corp.</u>, 604 F.3d 712, 720 (2d Cir. 2010).  A plaintiff "need not establish [such] <u>a prima facie</u> case of discrimination" in order to survive a 12(b)(6) motion to

13

dismiss, but "must nonetheless allege evidence stating a plausible claim of retaliation." Stewart v. City of New York, No. 11 Civ. 6935, 2012 WL 2849779, at *9 (S.D.N.Y. July 10, 2012) (alterations in original) (quoting Holland v. City of New York, No. 10 Civ. 2525, 2011 WL 6306727, at *9 (S.D.N.Y. Dec. 16, 2011)) (internal quotation marks omitted).

     1. <u>Timeliness</u>

NYSIF first argues that Mr. Schwartz's claims regarding events prior to June 3, 2010, should be dismissed as they are time-barred. (Def. Memo. at 1, 5). In response, Mr. Schwartz alleges that these claims are actionable under the continuing violations doctrine. (Pl. Memo at 7).

In order to bring a Title VII claim in New York federal court, an aggrieved employee must file an administrative complaint with the EEOC within 300 days of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e); <u>see also</u> <u>Petrosino v. Bell Atlantic</u>, 385 F.3d 210, 219 (2d Cir. 2004). This filing requirement functions as a statute of limitations for each individual unlawful employment practice claim. <u>Forsyth v. Federation Employment and Guidance Service</u>, 409 F.3d 565, 572 (2d Cir. 2005), <u>abrogated on other grounds by</u> <u>Ledbetter v. Goodyear Tire & Rubber Co.</u>, 550 U.S. 618 (2009), <u>superceded by statute</u>, 42 U.S.C. § 2000e-5(e)(3)(A).

14

However, the Supreme Court has long recognized a continuing
violations exception to the Title VII limitations period for claims
involving an ongoing policy or practice of discrimination.
National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 115
(2002).  Under this exception, "if a Title VII plaintiff files an
EEOC charge that is timely as to any incident of discrimination in
furtherance of an ongoing policy of discrimination, all claims of
acts of discrimination under that policy will be timely even if
they would be untimely standing alone."  Chin v. Port Authority of
New York & New Jersey, 685 F.3d 135, 155-56 (2d Cir. 2012)
(internal quotation marks omitted); see also Fitzgerald v.
Henderson, 251 F.3d 345, 359 (2d Cir. 2001).

     The outer boundaries of the continuing violations exception
are clear.  At one end, untimely claims regarding clearly discrete
acts such as "termination, failure to promote, denial of transfer,
or refusal to hire" cannot be brought outside the limitations
period, Morgan, 536 U.S. at 114, "even when undertaken pursuant to
a general policy that results in other discrete acts occurring
within the limitations period,"[1] Chin, 685 F.3d at 157.

     On the other hand, hostile work environment claims typically

---

     [1] Prior acts that are untimely may, however, be considered as
"relevant background evidence in a proceeding in which the status
of a current practice is at issue." Chin, 685 F.3d at 157.

15

merit application of the continuing violations doctrine because they "cannot be said to occur on any particular day," but instead occur "over a series of days or perhaps years." Morgan, 536 U.S. at 115.  In such instances, individual acts "may not be actionable on [their] own" because the unlawful practice emerges out of the "cumulative effect of individual acts."  Id.; cf. Rolon v. Ward, 345 F. App'x 608, 610 (2d Cir. 2009) (citing Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002)) (A "combination of seemingly minor incidents" may give rise to a First Amendment retaliation claim once the incidents reach a critical mass).

NYSIF asserts that the alleged reductions in Mr. Schwartz's job responsibilities between July 15, 2005, and June 3, 2010, are discrete acts and hence not protected by the continuing violations exception.  (Def. Reply Memo. at 2).  However, reassignments or incremental reductions in duties are distinguishable from the "clearly discrete acts" identified in Morgan.

Clearly discrete acts are excluded from the continuing violations exception because "[a] worker knows immediately if she is denied a promotion or transfer, if she is fired or refused employment. . . .  When an employer makes a decision of such open and definitive character, an employee can immediately seek out an explanation and evaluate it for pretext."  Chin, 685 F.3d at 157

(quoting <u>Ledbetter</u>, 550 U.S. at 649 (Ginsberg, J., dissenting)). By contrast, reassignments and changes to responsibilities are common tools of day-to-day managerial policy and consequently may not be questioned until later, when the act can be viewed in context with other behavior. <u>See</u> <u>Rolon</u>, 345 F. App'x at 610.

It is entirely plausible that a reasonable employee in Mr. Schwartz's position would not have been aware of the allegedly adverse nature of his pre-June 3, 2010 reductions in duties until NYSIF relied on them to justify his August 18, 2010 reassignment. Moreover, the withdrawal of responsibilities would likely not have been actionable before reaching a critical mass in conjunction with Mr. Schwartz's August 18, 2010 reassignment. Hence, accepting all factual allegations and drawing all reasonable inferences in the plaintiff's favor, Mr. Schwartz's pre-June 3, 2010 claims are not clearly discrete acts and thus not time-barred.

NYSIF argues that in any event, Mr. Schwartz has not alleged a single occasion on which his responsibilities were diminished within the filing period, and consequently has not pled any timely allegations of retaliation that would render the earlier acts timely under the continuing violations exception (Def. Reply Memo. at 2-3). This is incorrect. Mr. Schwartz claims that NYSIF's pre-June 3, 2010 actions were part of an ongoing violation because they

17

precipitated and then provided the purported justification for his August 18, 2010 reassignment. (Pl. Memo. at 8). Since this claim is not implausible, Mr. Schwartz's pre-June 3, 2010 claims are timely.

### 2. Material Adversity

NYSIF next argues that Mr. Schwartz's allegations regarding his reassignment and subsequent training are insufficiently severe to constitute retaliation under Title VII. In particular, NYSIF argues that (1) a reassignment is not a demotion in form or substance and (2) Mr. Schwartz has not alleged any actual harm from receiving incomplete training.

In order to satisfy the third element of a Title VII prima facie retaliation claim, a plaintiff must establish that the employer's behavior was "materially adverse," in that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Railroad Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). This standard is broader than Title VII's anti-discrimination protection, and "extends beyond workplace-related or employment-related retaliatory acts and harm." Id. at 67. At the same time, Title VII does not protect employees "from all retaliation, but [only] from retaliation that produces an injury or

18

harm." Id.  Consequently, the alleged retaliatory behavior "must be more disruptive than a mere inconvenience or an alteration of job responsibilities," Patrolmen's Benevolent Association v. City of New York, 310 F.3d 43, 51 (2d Cir. 2002) (internal quotation marks omitted), such as "being replaced as acting group leader, having [a] custodial route reassigned and have personal items removed from a locker," Avillan v. Donahoe, No. 11-1772-cv, 2012 WL 1889422, at *1 (2d Cir. May 25, 2012).

### a. August 18, 2010 Re-Assignment

The Second Circuit has long recognized that lateral job transfers may constitute a materially adverse employment action under Title VII. See Kessler v. Westchester County Department of Social Services, 461 F.3d 199, 206-07 (2d Cir. 2006) ("[A] transfer is an adverse employment action if it results in a change in responsibilities so significant as to constitute a setback to the plaintiff's career . . . . [A]n adverse employment action may [also] be found where the plaintiff was transferred from an elite unit to one that was less prestigious, or where the transfer effected a "radical change in nature of the [plaintiff's] work." (final alteration in original) (internal quotation marks and citations omitted)).  In White, the Supreme Court further affirmed this principle with regard to anti-retaliation claims, noting that

> almost every job category involves some responsibilities
> and duties that are less desirable than others.  Common
> sense suggests that one good way to discourage an employee
> . . . from bringing discrimination charges would be to
> insist that she spend more time performing the more
> arduous duties and less time performing those that are
> easier or more agreeable.  That is presumably why the EEOC
> has consistently found "[r]etaliatory work assignments" to
> be a classic and "widely recognized" example of "forbidden
> retaliation."

548 U.S. at 70-71 (second alteration in original) (internal citations omitted).

Here, NYSIF argues that Mr. Schwartz's opposition to his reassignment is "derived from his subjective feelings about the two assignments, rather than about any objectively determinable difference in their prestigiousness." (Def. Reply Memo. at 3-4). However, this is factually incorrect for two reasons.

First, contrary to NYSIF's assertions, there is a clearly objective difference in the degree of exclusivity between the two assignments.  NYSIF acknowledges this when it states that Mr. Schwartz "limits his support for the claim . . . to the irrelevant assertion that there were many Hearing Representatives assigned to Workers Compensation Hearings, while he was the only Hearing Representative assigned to billing." (Def. Reply Memo. at 3). NYSIF's actual argument thus appears to be that scarcity is not a relevant indicator of prestige.  This is unpersuasive.  Job

prestige is often determined by the difficulty of acquiring a position, which in turn depends at least partially on the number of similar positions available. Such logic is facially plausible in the instant case, in which Mr. Schwartz alleges that he was reassigned from a position as the "Claims Dept. technical expert concerning medical bill processing issues" (Compl., ¶ 38) to "one of approximately 75 other employees" that attend Workers' Compensation Hearings on behalf of NYSIF (Pl. Memo. at 12).

Second, in addition to loss of prestige, Mr. Schwartz alleges that his reassignment resulted in a material change in the substance of his employment by significantly altering his responsibilities from those he previously exercised for over a decade. (Compl., ¶¶ 95-97, 104, 109, 115; Pl. Memo. at 12). In Rodriquez v. Board of Education of Eastchester Union Free School District, the court found a materially adverse employment action when an art teacher was transferred from a junior high school position to an elementary school position. 620 F.2d 362, 366 (2d Cir. 1980). In reaching its decision, the court held that the transfer represented "severe professional . . . trauma," since the plaintiff's new responsibilities "were so profoundly different . . . as to render utterly useless her twenty years of experience and study in developing art programs for middle school children." Id.

21

Rodriquez is analogous to the instant case.  Prior to his reassignment, Mr. Schwartz performed duties solely related to bills and bill processing for 32 years.  (Compl., ¶ 56).  Furthermore, his prior assignment included a number of specialist duties, such as being the "only member of the [Quality Assurance Review] team that reviewed/assessed bill processing by [NYSIF] Claims Department staff" and "the primary liaison with ITS (Information Technology Services) pertaining to automated bill processing." (Compl., ¶¶ 39, 42).  A reasonable employee in Mr. Schwartz's position, if faced with the threat of reassignment to a new position that would involve significant re-training and a loss of such specialized responsibilities, could be dissuaded from making or supporting a charge of discrimination.  Hence, NYSIF's claims pertaining the material adversity of Mr. Schwartz's reassignment are rejected.

### b. Failure to Train

NYSIF next argues that Mr. Schwartz's claim related to the training classes should be dismissed because Mr. Schwartz has failed to allege any concrete impairment as a result of the alleged lack of training.  (Def. Reply Memo. at 4).  The only material harm that the plaintiff claims to have suffered as a result of NYSIF's alleged failure to train was that "he did not possess the foundation of knowledge that Claims Services Representatives I had

22

when they transitioned into the position of Insurance Fund Hearing Representative." (Compl., ¶ 155; Pl. Memo. at 14).  However, this claim, even if true, is not evidence of a materially adverse employment action.  Rather, it is a conclusory assertion concerning the difference in skills that employees of different backgrounds bring to a new position.

Mr. Schwartz's other descriptions of the harm allegedly suffered as a result of NYSIF's failure to train are also entirely conclusory; for example: "while Mr. Cassidy provided training in the handling of cases set for hearings, as I lacked much of the basics . . . , it is analogous to putting up floors at a construction site, on a building with an insecure foundation" (Plaintiff's Rebuttal at 3-4) and "[a] lack of knowledge in the fundamentals of an assignment is far worse than lacking knowledge in a few things here or there, as the employee [] would not know what questions to ask, as he would not know what he does not know." (Pl. Memo. at 11).

In the absence of specific factual allegations of material harm as a result to insufficient training, Mr. Schwartz's claim is not plausible and should be dismissed.

### 3. Preclusion of Pre-February 4, 2008 Claims

NYSIF argues that any retaliation claims concerning behavior

that took place prior to Mrs. Schwartz's February 4, 2008 EEOC filing must be dismissed because Title VII does not recognize a cause of action for retaliation against a Workers' Compensation claim. (Def. Memo. at 5 n.3). This argument should be rejected, but Mr. Schwartz's pre-February 4, 2008 claims should nevertheless be dismissed for failing to state a claim under Title VII.

New York Workers' Compensation Law ("NYWCL") provides an exclusive state remedy for retaliation against a person instigating or participating in a Workers' Compensation hearing. N.Y. Workers' Comp. Law, §§ 29(6) & 120; Ridgway, 2007 WL 1098737, at *4. This principle of exclusivity applies to any action brought under New York State law. For example, in Brook v. Overseas Media, Inc., 69 A.D. 3d 444, 445 (1st Dep't 2010), the court dismissed a claim of retaliatory termination under the New York Human Rights Law on the grounds that the "mere filing" of a Workers' Compensation claim is not protected activity because it does not constitute opposing or complaining about unlawful discrimination. In its holding, the court noted that "[e]ven when the complaint is liberally construed to allege that plaintiff's employment was terminated in retaliation for requesting an accommodation for her disability, it does not state a cause of action because it fails to allege that she opposed her employer's discriminatory failure to make reasonable

24

accommodation." <u>Id.</u>

However, under the Supremacy Clause, NYWCL cannot preclude an adequately pled claim under federal law. U.S. CONST. art. VI, cl. 2. Hence, if an employee engages in an activity in the context of the Workers' Compensation claim process that is protected under Title VII and suffers retaliation as a result, he or she is entitled to bring a claim under Title VII. <u>See</u> <u>Torres v. Pisano</u>, 116 F.3d 625, 640 (2d Cir. 1997).[2]

42 U.S.C. § 2000e-3(a) provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter

---

[2] NYSIF relies on two cases to support its contrary assertion that retaliation against a New York Workers' Compensation claim is never actionable under Title VII. The first, <u>De la Cruz v. City of New York</u>, 783 F. Supp. 2d 622, 630 (S.D.N.Y. 2011), is distinguishable since the plaintiff's Workers' Compensation claim in that case did not allege any discriminatory behavior. The second, <u>Agard v. New York State Department of Taxation and Finance</u>, No. 10 CV 4726, 2012 WL 601474 (E.D.N.Y. Feb. 23, 2012), involved a plaintiff who claimed retaliation after testifying at a Workers' Compensation hearing concerning a colleague's allegedly discriminatory termination. In its decision to dismiss the plaintiff's claim, the court held that "retaliation for seeking Workers' Compensation is not cognizable under Title VII." <u>Id.</u> at *5. I respectfully disagree. The mere fact of seeking Workers' Compensation is not protected activity in itself under Title VII, but an individual claim may be protected activity if it serves to oppose -- or may reasonably be believed to oppose -- discriminatory behavior. <u>See</u> 42 U.S.C. § 2000e-3(a).

[42 U.S.C. §§ 2000e through 2000e-17]."  An individual need not oppose an actual "unlawful employment practice" in order to be entitled to protection against discriminatory retaliation, provided he or she has a "good faith reasonable belief that he was opposing an employment practice made unlawful by Title VII." Kessler, 461 F.3d at 210 (internal quotation marks omitted). This protection extends to retaliation against employees for protected activity engaged in by close third-parties such as spouses.  Thompson v. North American Stainless, LP, ___ U.S. ___, 131 S. Ct. 863, 868 (2011) ("[It is] obvious that a reasonable worker may be dissuaded from engaging in protected activity if she knew her fiance would be fired").[3]

In this case, Mr. Schwartz appears to be asking the court to infer that his wife's Workers' Compensation claim constituted opposition to an unlawful employment practice under Title VII. However, his only factual allegation is that "Plaintiff's wife alleged a cumulative pattern, over several years, of inappropriate behavior by NYS Insurance Fund employees/authority figures." (Compl., ¶ 62; Pl. Memo. at 4).  Even accepting this allegation as

---

[3] Third-party retaliation may be "challenged by both the individual who engaged in protected activity and the relative, where both are employees." Thompson, ___ U.S. at ___, 131 S. Ct. at 870-71 (Ginsburg, J., concurring) (internal quotation marks omitted).

true, it remains unclear that the inappropriate behavior alleged by Mrs. Schwartz was discriminatory, or in the alternative, whether a reasonable person in Mrs. Schwartz's position could have plausibly believed it to be discriminatory at the time of filing. Hence, although the defendant's NYWCL preclusion argument is rejected, Mr. Schwartz's pre-February 4, 2008 claims should nevertheless be dismissed for failure to state a claim.

4. <u>Causal Connection</u>

Finally, NYSIF argues that Mr. Schwartz has failed to allege facts demonstrating a causal connection between any protected activity and an adverse employment action. (Def. Memo. at 9).

A plaintiff may satisfy the "causal connection" element of a prima facie retaliation claim by establishing that "a retaliatory motive play[ed] a part in adverse [] actions toward [him], whether or not it was the sole cause." <u>Papelino</u>, 633 F.3d at 92 (2d Cir. 2011) (alterations in original) (internal quotation marks omitted). The plausibility of such a claim "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render [the] plaintiff's inferences unreasonable." <u>L-7 Designs, Inc. v. Old Navy, LLC</u>, 647 F.3d 419, 430 (2d Cir. 2011).

27

It is well-accepted that temporal proximity between a plaintiff's protected activity and a materially adverse action may in itself be sufficient prima facie evidence of a retaliatory motive. Kaytor v. Electric Boat Corp., 609 F.3d 537, 552 (2d Cir. 2010). However, courts have generally held that the two actions must be "very close," such that a hiatus of "three months or more is insufficient." Dixon v. International Federation of Accountants, 416 F. App'x 107, 110 (2d Cir. 2011) (citing Clark County School District v. Breeden, 532 U.S. 268, 273 (2001); see also Murray v. Visiting Nurse Services of New York, 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007).

In this case, Mr. Schwartz alleges that he suffered multiple reductions in job responsibilities "from the time [his] wife filed her Workers' Compensation claim (July 14, 2005), to the date [NYSIF] re-assigned [him] on August 18, 2010." (Compl., ¶ 95). He further alleges that the "bogus explanation" given by NYSIF for these reductions "allows an inference that [NYSIF] is concealing an untruthful/dishonest reason for [its] actions," and that the real reason was an ongoing policy of retaliation that extended to his later re-assignment and re-training. (Pl. Memo. at 14). However, the plaintiff does not specifically allege that any of these reductions were temporally proximate to Mrs. Schwartz's July

28

14, 2005 Workers' Compensation filing, her February 4, 2008 EEOC
filing, or any other behavior that could plausibly constitute
opposition to discrimination.  In the absence of such allegations,
Mr. Schwartz's complaint fails to establish a claim of temporal
proximity, and hence should be dismissed in its entirety.  However,
because it is not yet apparent that the plaintiff is unable to
proffer facts sufficient to support his claims, he should be
provided an opportunity to replead.

Conclusion

     For the reasons set forth above, I recommend that the
defendant's motion to dismiss the complaint be granted without
prejudice to the plaintiff filing an amended complaint.  To plead
sufficiently the claims included in the original complaint, any
amended complaint must include factual allegations sufficient to
show that: (1) the plaintiff suffered material harm as a result of
NYSIF's failure to provide sufficient training, (2) Mrs. Schwartz's
Workers' Compensation claim opposed discrimination by NYSIF, and
(3) NYSIF's reductions to the plaintiff's job responsibilities from
July 15, 2005, to August 18, 2010, were causally connected to
protected activity undertaken by Mrs. Schwartz.

     Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d)
of the Federal Rules of Civil Procedure, the parties shall have

fourteen (14) days from this date to file written objections to
this Report and Recommendation.   Such objections shall be filed
with the Clerk of the Court, with extra copies delivered to the
chambers of the Honorable George B. Daniels, Room 1310 and to the
chambers of the undersigned, Room 1960, 500 Pearl Street, New York,
New York 10007.   Failure to file timely objections will preclude
appellate review.

                              Respectfully submitted,


                              JAMES C. FRANCIS IV
                              UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          August 28, 2012

Copies mailed this date:

Jerry Schwartz
60 Connecticut Avenue
Freeport, NY 11520

Elizabeth Pricket-Morgan, Esq.
Assistant Attorney General
120 Broadway, 24th Floor
New York, NY 10271

30